IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 22, 2019

## PAMELA DIANE STARK v. JOE EDWARD STARK

**Appeal from the Circuit Court for Shelby County**
**No. CT-002958-18     Robert Samual Weiss, Judge**

————————————————————

### No. W2019-00901-COA-T10B-CV

————————————————————

In this accelerated interlocutory appeal, Wife appeals the trial court's denial of her motion to recuse the trial judge in her divorce case. Specifically, Wife argues that the trial court's rulings demonstrate a bias against her because the trial court purportedly ruled in favor of Husband in excess of the relief requested. We affirm the trial court's denial of Wife's motion to recuse.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and ANDY D. BENNETT, JJ., joined.

Pamela Diane Stark, Memphis, Tennessee, Pro se.

Melissa C. Berry, Cordova, Tennessee, for the appellee, Joe Edward Stark.

### OPINION

#### BACKGROUND

Plaintiff/Appellant Pamela Diane Stark ("Wife") filed a complaint for divorce against Defendant/Appellee Joe Edward Stark ("Husband") on June 29, 2018. Wife is a licensed attorney working for the District Attorney General of the Thirtieth Judicial District. Husband works as a police officer for the Memphis Police Department. On November 28, 2018, Wife, after obtaining leave of court, filed an amended complaint to assert that Husband had committed battery and intentional infliction of emotional distress against her.  According to Wife, the battery allegations result from an incident of domestic violence that occurred on June 17, 2018. Although Wife's employer recused

from the matter and a special prosecutor was appointed, Wife asserts that the Memphis Police Department continues to investigate the matter.

In support of the divorce and tort actions, Wife caused six subpoenas to be issued for the depositions of Husband and other witnesses, including a lieutenant from the Memphis Police Department. The notices indicated that five of the depositions, including Husband's, would be taken at the marital residence. The final deposition was to take place in Missouri where the witness resided. On January 9, 2019, Husband filed a motion for a protective order seeking that all in-person depositions be taken at the Shelby County courthouse, that a bailiff be present for Husband's deposition, and that the out-of-state deposition take place remotely.

A hearing on Husband's motion was held on January 25, 2019. No transcript or statement of the evidence from this hearing is included in the record.[1] On February 13, 2019, the trial court ruled that Husband's motion was "reasonable under the circumstances." As such, the trial court ordered that the depositions of Husband, as well as well as Sgt. Mote, Anthony Mullins, Daniel Cordero, and James Erwin would take place at the Shelby County Courthouse and that a bailiff would be present for Husband's deposition.[2] The trial court denied, however, Husband's request that the deposition of the out-of-state witness be taken remotely, ruling that the deposition would take place in Missouri unless the witness agreed to be deposed in Shelby County.

In the meantime, on January 15, 2019, Husband filed a petition for a restraining order under rule 65.03 of the Tennessee Rules of Civil Procedure. Therein, Husband alleged that Wife was posting on her personal Facebook page allegations against Husband with regard to domestic violence. Additionally, Husband alleged that Wife "disparaged the Memphis Police Department's internal handling and investigation of said case." Husband argued that such dissemination of these allegations could cause immediate irreparable harm to Husband's reputation and employment. As such, Husband requested that the trial court enter an immediate temporary restraining order requiring Wife to remove the posts and to refrain from making similar posts or comments in the future. Wife responded in opposition to Husband's petition on May 21, 2019. Therein,

---

[1] Wife asserts that access to the transcript was blocked by Husband. Husband counters that he is not required to provide Wife with a copy of the transcript as she did not share in its cost, citing ***Beef N' Bird of Am., Inc. for Use & Benefit of Galbreath v. Cont'l Cas. Co.***, 803 S.W.2d 234, 240 (Tenn. Ct. App. 1990) ("A party who does not join in the engagement and payment of a stenographer has no contract right to require the stenographer to transcribe the record which is therefore unavailable to him unless and until made available to him on terms satisfactory to the stenographer and the party or parties who engaged the stenographer."). This dispute is not within the scope of this limited accelerated appeal, nor has it been raised as an issue by Wife.

[2] The trial court noted that Husband requested in the alternative to a bailiff, that his deposition be taken "audiovisually." The trial court ruled that this request was considered in its order that the depositions be taken at the Shelby County Courthouse but did not specifically allow this deposition to be taken "audiovisually."

Wife admitted to making the posts, but asserted that her comments concerned a matter of public concern protected by the United States and Tennessee Constitutions. Finally, Wife asserted that Husband's motion was an attempt to harass Wife and "bias [the trial judge] into a belief that 'contentiousness' exists between the parties."

A hearing on Husband's petition was held on February 7, 2019. Husband testified that Wife had engaged in various alleged harassing behavior, including notifying his lieutenant of the allegations and posting about the domestic violence allegations on her personal Facebook page. According to Husband, these posts were visible to his co-workers and clearly suggested that he was a domestic abuser. Likewise Husband testified that after filing his petition, Wife informed his counsel that she had also sent a letter to Memphis Mayor Jim Strickland concerning alleged corruption in the Memphis Police Department; the letter specifically referenced Husband and the allegations against him. Husband explained that an investigation into the allegations was ongoing, but that the allegations alone could be injurious to his reputation with his employer. Finally, Husband indicated that Wife's actions were harassing and done in an effort to intimidate him. Wife chose not to testify; rather she provided only legal argument that her statements were protected by the First Amendment. In contrast, Husband's counsel argued that the mandatory injunction in place at the time the divorce complaint was filed prohibited the parties from harassing or making disparaging comments about each other, including to employers, and that the injunction should be extended to force Wife to remove the offending posts.

Following the argument of the parties, the trial court ruled that Wife's argument regarding the First Amendment was not well-taken because her allegations did not refer to corruption generally as a matter of public concern, but with regard to the allegations against Husband specifically, which action was prohibited by the mandatory divorce injunction. As such, the trial court ruled that Wife was to remove the offending posts the same day and that "a mandatory injunction will go into effect that there will be no communication with employers." The trial court also ruled that "making any further allegations in social media is completely inappropriate and is being enjoined." Thereafter the following exchange occurred:

> [Wife]: Well, Your Honor, I will just with all candor to the Court say you might as well take me into custody right now. I have contacted the FBI as well as having contacted the mayor of Memphis to try and get this addressed. I am saying that I am a victim of corruption from the Memphis Police Department, and I am going to pursue every course of action I have and –
>
> THE COURT: Ms. Stark, are you going to remove that post, yes or no?

- 3 -

[Wife]: I am not.

THE COURT: Officer Houston, take her into custody.

We'll stand in recess.

(Short break.)

THE COURT: Ms. Stark, please stand. Are you going to comply with this Court's orders?

[Wife]: No, I'm not.

THE COURT: All right. I'm making a finding that you are in direct contempt of court by willfully refusing to comply with this Court's orders. You . . . will be held in custody until such time that you decide that you want to change your position and you apologize to this Court. We'll stand in recess until that time.

On February 13, 2019, the trial court entered its written order granting Husband's petition for a restraining order. Therein, the trial court noted the existence of the mandatory injunction restraining each party "from harassing, threatening, assaulting or abusing the other and from making disparaging remarks about the other in the presence or to either party's employer." The trial court found that in spite of this injunction, Wife sent correspondence to Husband's supervisors and posted on social media regarding the domestic violence allegations. The trial court further found that Wife was aware of the potential ramifications of her actions and "the sole purpose of making the post and contacting his employer was to harass the Petitioner directly in contravention of the mandatory injunction." As such, the trial court ruled that Husband's petition was granted, Wife was to remove the offending Facebook post, and Wife was enjoined "from making any other public allegations against [Husband] on social media (on any platform) or to his employer which may affect Petitioner's reputation or employment."

On March 29, 2019, the trial court entered its order finding Wife in "direct civil contempt." The order noted that Wife was taken into custody "until such time as she agreed to remove the [] post in question." The order stated that Wife agreed to comply with the trial court's restraining order approximately four hours after being taken into custody and had therefore purged her contempt.

Also on March 29, 2019, the parties appeared before the trial court on several unrelated matters. After the trial court ruled on various motions by Husband, Wife informed the trial court that she had a motion to recuse that had yet to be filed. The trial judge directed Wife to file her motion, set it for hearing, and that he would rule on it in

- 4 -

due course. Wife filed her motion on the same day. Wife's recusal motion alleged that the trial court's actions in granting Husband's motion for protective order and petition for restraining order, as well as finding Wife in contempt showed an appearance of bias that warranted recusal. Additionally, Wife alleged that the trial judge had shown "disdain" for pro se litigants. The motion was accompanied by Wife's affidavit stating that the facts contained in the motion were "true to the best of my knowledge."

On April 5, 2019, Husband filed a motion to have argument on the motion to recuse, alleging that Wife had refused to set a hearing on her own motion. According to Husband, despite refusing to set her motion, Wife objected to the entry of orders on matters decided by the trial court prior to the filing of the recusal motion. As such, Husband alleged that he "cannot reasonably proceed with trial preparation until and unless the Motion to Recuse is disposed of, as Wife is using said pending motion as both a shield and a sword." Husband therefore requested that the trial court set a hearing on the motion to recuse or issue a written order on the motion.

Despite Wife's objection, the trial court entered an order on April 9, 2019, adjudicating the motions that had been heard on March 29, 2019, prior to the filing of the recusal motion. In response, Wife filed a motion to set aside the April 9 order on April 16, 2019. Wife argued that the trial court's entry of this order violated Rule 10B of the Tennessee Supreme Court Rules. *See* Tenn. Supt. Ct. R. 10B, § 1.02 ("While the motion is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in the order in which such action is taken."). On the next day, Wife filed a supplemental motion to recuse noting the trial court's violation of Rule 10B. Again, the supplemental motion was accompanied by an affidavit stating that the facts were "true to the best of my knowledge."

No oral argument was ever had on the motion to recuse. Instead, the trial judge entered a lengthy written order denying the motion on May 3, 2019. Therein, the trial judge ruled that Wife's motion was procedurally deficient in that it was not accompanied by an affidavit stating that the facts contained therein were based on personal knowledge and the motion was untimely. Nevertheless, the trial judge went on to consider the merits of Wife's motion, finding that there was no basis for recusal either subjectively or objectively. In support, the trial judge noted that its rulings "have been confined to the matters specifically before the [c]ourt and the [c]ourt has not prejudged any of the allegations raised by [Wife]." In particular, the trial court noted that its decision to grant the protective order relating to the location of the deposition was based on the allegations of domestic abuse contained in Wife's pleadings; the taking of depositions in a public place rather than Wife's home was therefore "in everyone's best interest." The trial court denied that its decision was based on any finding crediting Husband's allegation that Wife had engaged in "unpredictable and inappropriate behavior."

Wife thereafter filed a timely accelerated petition for recusal appeal to this Court pursuant to Rule 10B of the Tennessee Supreme Court Rules. On May 24, 2019, we directed Husband to file a response to Wife's petition. Husband complied on June 10, 2019. We now exercise our discretion to decide this recusal appeal without oral argument. *See* Tenn. R. Sup. Ct. 10B, § 2.06 ("The appellate court's decision, in the court's discretion, may be made without oral argument.").

## ISSUE PRESENTED

This appeal involves a single issue: whether the trial judge erred in denying Wife's motion to recuse.[3] Recusal should be granted "whenever the judge has any doubts about his or her ability to preside impartially" or "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." **Alley v. State**, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994) (footnote omitted). The trial judge in this case expressly ruled that it had "no actual bias, prejudice, or favor for or against any party or attorney in this matter." As such, the dispositive issue is whether a reasonable person would question the judge's impartiality under the circumstances of this case. We review the trial judge's denial of a motion to recuse "under a de novo standard of review." Tenn. Sup. Ct. R. 10B, § 2.01.

## ANALYSIS

### I.     Procedure

The parties first dispute whether the appropriate procedure was followed in this case. Recusal issues are governed by Rule 10B of the Tennessee Supreme Court Rules. Pursuant to Rule 10B of the Rules of the Tennessee Supreme Court, a litigant is entitled to seek disqualification of a trial judge by filing a motion that: (1) is supported by an affidavit under oath or a declaration under penalty of perjury by personal knowledge or by other appropriate materials; (2) states, with specificity, all factual and legal grounds supporting disqualification of the judge; and (3) affirmatively states that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. Tenn. Sup. Ct. R. 10B, § 1.01.

Upon filing of such motion, "the judge whose recusal is sought shall either grant or deny the motion in writing." **Watson v. City of Jackson**, 448 S.W.3d 919, 927 (Tenn. Ct. App. 2014). If the motion is denied, the judge shall state in writing the grounds for the denial. Tenn. Sup. Ct. R. 10B, § 1.03. Additionally, if the motion is denied, the movant

---

[3] In the trial court, Wife also took issue with the trial court's action in entering two orders while the motion to recuse was pending. Wife does not raise this argument on appeal and we therefore do not address it.

may file an accelerated interlocutory appeal of the denial. According to Section 2.02 of Rule 10B of the Rules of the Tennessee Supreme Court:

> To effect an accelerated interlocutory appeal as of right from the denial of a motion for disqualification or recusal of the trial court judge, a petition for recusal appeal shall be filed in the appropriate appellate court within twenty-one days of the trial court's entry of the order. In civil cases, a bond for costs as required by Tenn. R. App. P. 6 shall be filed with the petition. A copy of the petition shall be promptly served on all other parties, and a copy also shall be promptly filed with the trial court clerk. For purposes of this section, "appropriate appellate court" means the appellate court to which an appeal would lie from the trial court's final judgment in the case.

Tenn. Sup. Ct. R. 10B, § 2.02. The movant is also required to include copies of "all supporting documents filed in the trial court, a copy of the trial court's order or opinion ruling on the motion, and a copy of any other parts of the trial court record necessary for determination of the appeal." Tenn. Sup. Ct. R. 10B, § 2.03.

Here, the trial court ruled that Wife's motion was procedurally defective in two aspects. First, the trial court found that the affidavit accompanying Wife's motion did not state that it was based on personal knowledge. Additionally, the trial court ruled that Wife's motion was untimely. We will address each alleged defect in turn.

**A.**

As previously discussed, Rule 10B states that a motion to recuse must be accompanied by "an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials." Tenn. Sup. Ct. R. 10B, § 1.01. Here, Wife's accompanying affidavit stated only that the information contained therein was "true to the best of my knowledge." The trial court ruled that this statement did not meet the high standard required of Rule 10B. Husband agrees with the trial court's assessment of Wife's affidavit, arguing that the affidavit in this case closely resembles the affidavit that was held insufficient in **Berg v. Berg**, No. M2018-01163-COA-T10B-CV, 2018 WL 3612845 (Tenn. Ct. App. July 27, 2018). As the panel in **Berg** explained:

> [The affidavit] clearly does not meet the standard set forth in Rule 10B. Instead of being made under oath on "personal knowledge" as is required, the affidavit filed in this case includes an oath attesting that the statements included are "true to the best of [Mother's] knowledge, information and belief." Averring that something is true to the best of one's knowledge, information, and belief does not signify that it is based on personal knowledge. *See Bridgewater v. Adamczyk*, No. M2009-01582-COA-R3-CV, 2010 WL 1293801, at * 4 (Tenn. Ct. App. Apr. 1, 2010) (noting that

personal knowledge is knowledge gained through firsthand experience or observation); ***Seals v. Tri-State Defender, Inc.***, No. 02A01-9806-CH-00172, 1999 WL 628074, at *2 (Tenn. Ct. App. Aug. 16, 1999) (noting that an affidavit stating a fact "to my best knowledge and ability" was not made on personal knowledge); *see also* Edward J. Levin, "B*est" Is Not Always Best When it Comes To Knowledge*, 30 Prob. & Prop. 44, 45 (Jan./Feb. 2016) (noting that the term "best knowledge" embodies a level of uncertainty and that a statement made to the "best knowledge" of a person does not mean that the statement is based on that individual's personal knowledge).

***Berg***, 2018 WL 3612845, at *3. As such, the ***Berg*** opinion holds that in light of the deficiencies in the affidavit, the trial court was not required to address the substantive merits of the recusal motion.

Another panel of this Court came to the opposite conclusion in ***Beaman v. Beaman***, No. M2018-01651-COA-T10B-CV, 2018 WL 5099778 (Tenn. Ct. App. Oct. 19, 2018). Therein, the panel concluded that use of "magic words" was not necessary where "[a] fair interpretation of Wife's counsel's declaration in this case demonstrates that it was based on personal knowledge even though it did not expressly state that it was based "on personal knowledge."" ***Id.*** at 13. The court distinguished the affidavit at issue with the affidavit in ***Berg***, noting that "[u]nlike the affidavit at issue in ***Berg***, the declaration in this case did not include qualifying language necessarily negating the conclusion that it was based on personal knowledge." As such, the ***Beaman*** panel went on to address the merits of the recusal motion. ***Id.*** at *14–*15.

The statement in Wife's affidavit is substantially similar to that utilized in ***Berg***, however, the affidavit itself and the recusal motion at issue both readily reveal that Wife's allegations are based on hearings where she was present and orders to which she was a party. In a similar situation, this Court has considered whether "it [was] apparent from the substance of the disputed affidavits [] that they [were] based on the personal knowledge of the affiants." ***Ueber v. Ueber***, No. M2018-02053-COA-T10B-CV, 2019 WL 410703, at *3 (Tenn. Ct. App. Jan. 31, 2019) (involving an affidavit "the same" as that filed in ***Berg***). Likewise, even a limited and surface-level inspection of Wife's motion reveals that it is indeed based on personal knowledge. Moreover, Wife's affidavit in support of her petition for recusal appeal specifically states that the facts contained in both her motion and appeal are based on personal knowledge. Finally, despite the trial court's finding that Wife's motion was defective, it did expressly and thoroughly consider the merits of Wife's motion and both parties have briefed the merits of the motion to this Court. As such, we conclude that the best practice in this case is to proceed to consider the remaining issues in this case notwithstanding Wife's failure to strictly comply with Rule 10B. We caution litigants, however, that we may not be so forgiving in the future.

**B.**

The trial court also found that Wife's motion was untimely. "Courts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order 'to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'" ***Kinard v. Kinard***, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (quoting ***Holmes v. Eason***, 76 Tenn. 754 (Tenn. 1882)). Consequently, "recusal motions must be filed promptly after the facts forming the basis for the motion become known, and the failure to seek recusal in a timely manner results in a waiver of a party's right to question a judge's impartiality." ***Davis v. Tennessee Dep't of Employment Sec.***, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999) (citations omitted).

Here, the basis of Wife's recusal motion results from two requests filed by Husband. The first request, a motion for a protective order regarding the taking of depositions, was filed on January 9, 2019, with a hearing that took place on January 25, 2019. The second request, a petition for a restraining order related to social media posts, was filed on January 15, 2019, and heard on February 7, 2019. The trial court entered orders on both motions on February 13, 2019. Wife filed her recusal motion on March 29, 2019. Although Wife waited until the trial court had ruled on some of Husband's motions before bringing the recusal motion to the trial court's attention, it appears that Wife generally agreed to Husband's requests during the March 29 hearing. As such, the record does not demonstrate that Wife's decision to hold the recusal motion was "experiment[al]" or strategic. ***Kinard***, 986 S.W.2d at 228.

Although we agree that Wife's decision to wait until the conclusion of the March 29, 2019 hearing is perplexing and serves to undermine her argument that she believes that the trial judge has an impermissible bias against her, we are reluctant to conclude that a delay of six weeks between the entry of the written order at issue and the recusal motion results in a waiver of her arguments. Rule 10B does not place a brightline rule on the timeliness of recusal motions, nor has this Court ever adopted such a rule. In another case, this Court proceeded to consider the merits of the appellant's recusal motion despite the fact that the motion was filed seven months after the divorce decree and over two months after an order on attorney's fees, both of which served as the basis for the recusal motion. *See **Ueber v. Ueber***, No. M2018-02053-COA-T10B-CV, 2019 WL 410703, at *3 (Tenn. Ct. App. Jan. 31, 2019). Although we acknowledged that the appellant's motion was "arguably somewhat untimely[,]" we exercised our discretion to nevertheless consider the merits of the recusal issue. ***Id.*** ("Tennessee law concerning appeals filed under Rule 10B gives this Court some discretion to waive certain procedural deficiencies in order to reach the merits of a motion filed under Rule 10B."). We have held, however, that a delay of over four months from when an appeal of the trial court's ruling has been filed does render a recusal motion untimely. *See **Kershaw v. Kershaw***, No. M2009-00151-COA-R3-CV, 2009 WL 4039262, at *4 (Tenn. Ct. App. Nov. 20, 2009). We are

not necessarily persuaded that the six week delay in this case renders Wife's motion untimely. In any event, however, we exercise our discretion to consider the merits of this appeal notwithstanding any allegations of delay.

## II.    Merits

Tennessee Code of Judicial Conduct Rule 2.11 provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned[.]" Tenn. R. Sup. Ct. 10, § 2.11. It is well-settled that "'[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right.'" *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)). Article VI, Section 11 of the Tennessee Constitution, Tennessee Code Annotated section 17-2-101, and the Code of Judicial Conduct prohibit a judge from presiding over a matter in which the judge has an interest in the outcome or where the judge is connected to either party. The purpose of the prohibition is to "guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court [] reached a prejudged conclusion because of interest, partiality, or favor." *Austin*, 87 S.W.3d at 470 (citation omitted). Additionally, we have emphasized that "the preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (citations omitted). Accordingly, even in cases wherein a judge sincerely believes that she can preside over a matter fairly and impartially, the judge nevertheless should recuse herself in cases where a reasonable person "'in the judge's position, knowing all the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564–65 (Tenn. 2001) (quoting *Alley*, 882 S.W.2d at 820). It is an objective test designed to avoid actual bias and the appearance of bias, "since the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis*, 38 S.W.3d at 565 (citation omitted).

Under Rule 2.3 of the Tennessee Code of Judicial Conduct, "[a] judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice." Tenn. R. Sup. Ct. 10, § 2.3(a). As such,

> A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:
>
> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding. . . .

Tenn. R. Sup. Ct. 10, § 2.11(A)(1).

Generally, the terms "bias" and "prejudice" refer to a state of mind or attitude that works to predispose a judge for or against a party. **Alley**, 882 S.W.2d at 821. "'However, not all unfavorable dispositions toward an individual or case can be properly described by those terms. The words suggest a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate because it is excessive, undeserved, or rests on knowledge the subject should not possess.'" **Cain-Swope v. Swope**, 523 S.W.3d 79, 89 (Tenn. Ct. App. 2016), *perm. app. denied* (Apr. 12, 2017) (quoting **Groves v. Ernst-W. Corp.**, No. M2016-01529-COA-T10B-CV, 2016 WL 5181687, at *5 (Tenn. Ct. App. Sept. 16, 2016)). Bias is often divided into two types, each of which implicates a different standard for determining whether recusal is warranted. Where a bias stems from an extrajudicial source, rather than from events or observations during litigation of a case, it is may be sufficient to justify recusal if the judge's behavior raises "reasonable questions about the judge's impartiality." **Groves**, 2016 WL 5181687, at *5; *see also* **McKenzie v. McKenzie**, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *3 (Tenn. Ct. App. Feb. 11, 2014) (quoting **Alley**, 882 S.W.2d at 821) ("To disqualify, prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case.'") Where, however, "the bias is alleged to stem from events occuring in the course of the litigation of the case, the party seeking recusal has a greater burden to show bias that would require recusal, *i.e.*, that the bias is so pervasive that it is sufficient to deny the litigant a fair trial." **McKenzie**, 2014 WL 575908, at *3. Nothing in Wife's petition for recusal appeal suggests that the alleged bias of the trial judge results from any extrajudicial source. As such, Wife must meet the higher standard to show a bias so pervasive as to deny her the right to a fair trial.[4]

Here, Wife asserts that the trial judge's rulings with regard to Husband's motion for a protective order and petition for a restraining order show a pervasive bias against her sufficient to necessitate recusal. As an initial matter, we note whether the trial judge erred in his rulings on Husband's motions is not an issue in this limited, interlocutory appeal. Indeed, Wife does not dispute that our jurisdiction in this appeal extends only to the question of whether a bias or appearance of impropriety exists that necessitates recusal of the trial judge. *See* **Duke v. Duke**, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012) ("In a Tennessee Supreme Court Rule 10B appeal, the only order we may review is the trial court's order that denies a motion to recuse. Pursuant to the rule, we may not review the correctness or merits of the trial court's other rulings[.]"). *But see* **Krohn v. Krohn**, No. M2015-01280-COA-T10B-CV, 2015 WL 5772549, at *7 (Tenn. Ct. App. Sept. 22, 2015) (no perm. app. filed) (considering the propriety of a discovery order in determining whether recusal was warranted). Neither does Wife dispute that complaints regarding the

---

[4] In the trial court, Wife "suggest[ed]" in her recusal motion that the trial judge was biased against all pro se litigants. Wife has apparently abandoned this argument, as she does not address it in any fashion in her petition for recusal appeal. As such, this argument is not before us.

"contentiousness of the proceedings nor any of the trial court's rulings do not constitute 'a reasonable basis for questioning the judge's impartiality.'" *See **In re Conservatorship of John Daniel Tate***, No. 2012-01918-COA-10B-CV, 2012 WL 4086159, at *3 (quoting ***State v. Hester***, 324 S.W.3d 1, 73 (Tenn. 2010)). We note that it is well-settled that adverse rulings, "even if erroneous, numerous and continuous," may not be sufficient to necessitate recusal. ***Alley v. State***, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). Indeed, the Tennessee Supreme Court has noted that adverse rulings are necessary byproducts of the adversarial process and the trial judge's role in "assess[ing] the credibility of those who testify before them." ***Davis v. Liberty Mut. Ins. Co.***, 38 S.W.3d 560, 565 (Tenn. 2001).

Rather than take issue with the trial court's substantive rulings, Wife contends that the trial court's "rulings have repeatedly exceeded the relief sought by opposing counsel and create an appearance of both bias and prejudice which require his recusal." Wife also asserts that the trial court's decisions show that he has prejudged the issues remaining in the case. As an initial matter, we note that throughout her petition for recusal appeal, Wife takes issue with several inferences and implications that she asserts are evident from the trial court's rulings. We agree that trial court orders may sometimes contain both express rulings and necessary implications. *See **Morgan Keegan & Co. v. Smythe***, 401 S.W.3d 595, 608 (Tenn. 2013) (holding, in the context of an arbitration action, "when construing orders and judgments, effect must be given to that which is clearly implied, as well as to that which is expressly stated"). As this Court has previously explained, however, "[w]e start our analysis of the grounds for recusal understanding that a party challenging the impartiality of a judge 'must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'" ***Duke v. Duke***, 398 S.W.3d 665, 671 (Tenn. Ct. App. 2012) (quoting ***Eldridge v. Eldridge***, 137 S.W.3d 1, 7–8 (Tenn. Ct. App. 2002)). As such, we will consider whether the evidence in the record would cause a reasonable person to question the judge's impartiality under the circumstances. In order to analyze this issue, we will consider each of the allegedly offending rulings made by the trial judge.

Wife first asserts that the ruling on the motion for protective order went beyond the relief requested by the motion by ordering that all depositions would take place in the Shelby County Courthouse. Specifically, Wife's petition for recusal appeal states as follows: "Per the Order on Motion for Protective Order, Judge Weiss ruled that all depositions must be held at the Shelby County Courthouse. However, this form of relief was only sought as it pertained to the deposition of [Husband] within the Motion for Protective Order." (Record citations omitted). Such statement is categorically false. Rather, Husband's motion contains the following request: "Husband would request that this Court enter a protective order requiring Wife to take the depositions of Sgt. Mote, Anthony Mullins, Daniel Cordero, and James Erwin at the Shelby County Courthouse or some other conference room in a public place." Thus, the trial court's decision to require

these depositions to take place at the courthouse was not outside of the relief requested.[5] Accordingly, Wife's claim that the trial court's decision to provide Husband with more relief than requested, thereby illustrating a bias against her, fails with regard to this order.

Wife's other issues with the trial court's order on this topic are also unsupported by the record. Specifically, Wife states that

> The Order on Motion to Recuse states that there was not a finding of "unpredictable and inappropriate" behavior on the part of Ms. Stark, but based on "it [being] in everyone's best interest." However, this is neither the language included within the order entered, nor the appropriate legal standard for such a ruling. TN. R. Civ. Pro. 26.03. Instead, said Order, in relevant part held that "Husband's Motion was well taken" and "that Husband's request that his deposition be taken audiovisually, or in the presence of a bailiff is reasonable under the circumstances which factors into the Court's ruling that said deposition be had only at the Shelby County Courthouse." The well-taken motion referenced was supported with allegations of "unpredictable and inappropriate" behavior and under a future, cold and inanimate review of the record, should an appellate court be asked to review a final judgment, said court would likely view the order as indeed making such a finding. Further, as previously mentioned, counsel for [Husband] submitted no evidence at the hearing on the Protective Order but relied solely on legal argument. Said legal argument consisted mainly of "sometimes she's a victim and sometimes she's a prosecutor" and "personally I do not want to go to [Wife's] house."

> Thus, it is not the Court's holding as to where the depositions must be held that gives rise to this Motion to Recuse, but the implication associated with the court exceeding the request of the opposing counsel. Additionally, the court's order incorporating and approving a motion based on "unpredictable and inappropriate" behavior as a reason to necessitate the close proximity of bailiffs, creates an extremely negative picture of Ms. Stark for future review. This negative inference was never supported, either by allegation or evidentiary proof, of any potentially dangerous conduct on Ms. Stark's part and the complete gratuitousness of the finding create a reasonable appearance of bias and prejudice.

(Record citations omitted).

---

[5] With regard to the deposition of the out-of-state witness, Husband requested that the deposition be taken remotely. The trial court denied this relief, ruling that the deposition would be taken in Missouri as requested by Wife unless the witness agreed to be deposed in Shelby County.

Respectfully, Wife's argument on this issue is difficult to discern. As Wife readily admits, nothing in the order suggests that the trial court found Wife guilty of "unpredictable and inappropriate" behavior. Rather, the trial court appears to have exercised its discretion to rule that the depositions should not be taken in Wife's home given the nature of the allegations in this case. The fact that the trial court granted Husband's motion does not mean that he necessarily credited all of Husband's allegations. Simply put, we decline Wife's invitation to infer some inappropriate motive from the trial court's ruling that is not evident from the face of the order or a thorough review of the record as a whole.

Moreover, again we note that we are not tasked with reviewing the correctness of the trial court's rulings, nor does an alleged incorrect ruling, standing alone, provide evidence of a bias sufficient to warrant recusal. Indeed, reviewing the trial court's ruling would be difficult in the absence of a transcript or statement of the evidence to substantiate Wife's allegations regarding the evidence presented at this hearing. *Cf. **In re M.L.D.***, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005) ("When no transcript or statement of the evidence is included in the record on appeal, we conclusively presume that the findings of fact made by the trial court are supported by the evidence and are correct."). Having determined that the trial court did not rule in excess of the relief requested, we must conclude that this order provides no evidence of a bias so pervasive as to deny Wife a fair trial.

The same is true with regard to the ruling on Husband's petition for a protective order concerning the social media posts. With regard to this request, Wife takes issue with the fact that Husband's petition did not allege that Wife violated the mandatory injunction put in place upon the filing of the divorce, while the trial court's order finds that Wife's actions were "directly in contravention of the mandatory injunction." While we agree that Husband's motion was not in the nature of a contempt action seeking redress for Wife's alleged violation of the mandatory injunction, the existence of the mandatory injunction was cited in the hearing on Husband's petition without objection and was subject to judicial notice by the trial court. *See generally* Tenn. R. Evid. 201 (governing judicial notice of facts "not subject to reasonable dispute"). Moreover, the trial court did not impose any penalty on Wife for the alleged violation of the mandatory injunction other than to explicitly extend the injunction to cover Wife's social media and other postings concerning Husband and the Memphis Police Department. This is exactly the relief that Husband sought in his motion. The simple fact that the proof at trial, in the trial court's view, indeed showed that Wife had violated the injunction already in place is simply not evidence of a pervasive bias against Wife, nor does it create an appearance of impropriety.

Likewise, the trial court's ruling that Wife's purpose in making the social media posts was to harass Husband is not evidence of bias or impermissible prejudgment. Here, Wife chose not to submit any evidence to dispute Husband's testimony that Wife was

harassing him through the dissemination of her allegations. Generally, the trial court's ruling after hearing evidence is simply not a basis for this Court to conclude that the trial court impermissibly prejudged the other issues remaining in this case. The trial court may often be called upon to hear evidence concerning preliminary matters in a case. This may lead the trial court to make rulings that affect future litigation or to the trial court having an unfavorable impression of a party. If this alone were evidence of impermissible prejudgment, any rulings by the trial court on preliminary matters would subject the trial court to removal efforts. *Cf.* ***C.D.B. v. A.B.***, No. M2018-00532-COA-T10B-CV, 2018 WL 1976119, at \*9 (Tenn. Ct. App. Apr. 26, 2018) ("A trial court's decision to exercise its authority under Rule 35.01 to move for or order a mental or psychological evaluation of a party based on knowledge learned during the proceedings is simply insufficient to show that the trial court had prejudged the disputed issues in the case; were that true, all trial courts who had ordered Rule 35 examinations would be required to thereafter recuse from hearing the merits of the dispute."). Instead, as previously discussed, even where a trial judge actually develops a bias from in-court interactions, such a bias must be so pervasive as to deny the litigant the right to a fair trial to warrant recusal. *See* ***McKenzie***, 2014 WL 575908, at \*3. Here, the record simply does not demonstrate any bias on the part of the trial judge, much less a bias of a pervasive nature.

Finally, Wife takes issue with the trial court's ruling finding her in contempt. Wife concedes, however, that the propriety of this ruling is not at issue in this appeal. Rather, Wife appears to dispute the procedure utilized by the trial court, as Wife was not permitted a separate hearing before a different judge. Tennessee, however, recognizes several types of contempt, including direct summary contempt, which may be found without the benefit of a separate hearing. *See* ***Daniels v. Grimac***, 342 S.W.3d 511 (Tenn. Ct. App. 2010) ("A trial judge has the authority to punish direct contempt summarily when necessary to protect the authority and integrity of the court and to prevent obstruction of the administration of justice. Direct contempt may be punished summarily if the judge certifies that he or she saw or heard the conduct constituting contempt."). While the correctness of the trial court's contempt decision may be evaluated by this Court in another proceeding, the only question in this case is whether the record shows sufficient evidence of bias or an appearance of impropriety to necessitate recusal.

We conclude that the transcript of this hearing contains no such evidence. Following the trial court's oral ruling on the motion for restraining order, Wife essentially invited the trial court to find her in contempt after stating that she would not follow the trial court's order. The trial court gave Wife another opportunity to comply after a break in the proceedings. Still, however, Wife refused to comply. The trial court thereafter held Wife in contempt. The transcript at issue reflects no disdain toward Wife or even the hint of a heated manner exhibited by the trial judge. As such, nothing in the record supports Wife's claim that these events create an appearance of impropriety or suggest that the

trial judge has impermissibly prejudged the remaining issues in this case such that recusal is warranted.[6]

In sum, after reviewing Wife's filing to this Court and the supporting documents, we conclude that Wife has failed to show a reasonable basis for questioning the trial judge's impartiality. In general, a trial court's unfavorable or even erroneous rulings are insufficient to show bias. Moreover, even if we were to assume *arguendo* that a trial judge's decision to grant more relief than requested by a party was a basis to question the judge's impartiality, the record does not show that this scenario occurred in this case. Here, the trial court's decision to require depositions to take place in a public forum was based on the fact that Wife raised serious allegations of domestic violence in her complaint. Likewise, the trial court's decision to grant Husband's request for a restraining order resulted from Husband's testimony that Wife's decision to disseminate those allegations in her chosen manner could affect his employment. Finally, the trial court's decision to hold Wife in contempt, regardless of whether it proves erroneous, occurred after Wife essentially invited the trial court to take that action. Wife has not shown that the any of these decisions were the product of pervasive bias or prejudgment. Simply put, nothing that occurred in this case would lead a reasonable person to question the judge's impartiality. As such, the trial court's denial of Wife's motion to recuse is affirmed.

### CONCLUSION

The judgment of the Shelby County Circuit Court is affirmed and this cause is remanded for further proceedings. Costs of this appeal are taxed to Appellant Pamela Diane Stark, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[6] For example, Wife asserts because the trial court's granted Husband a restraining order concerning Wife's statements, "it is reasonable to belief [sic] that [the trial judge] has formed an opinion" as to her tort claims against Husband. Neither the trial court's written order nor its oral ruling in any way suggests that the trial court has determined these issues; rather, the trial court specifically notes that an investigation into the allegation has not concluded.